UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEWART TITLE GUARANTY COMPANY, a
Texas Corporation,

    Plaintiff,

vs.            Case No.   2:04-cv-316-FtM-33SPC

TITLE DYNAMICS, INC., a Florida
Corporation, and PRINCE BROTHERS,
INC., an Alabama Corporation f/k/a
PRINCE BROTHERS, INC. d/b/a
ONLINETITLE.NET,

    Defendants.
_____/

**ORDER**

This matter comes before the Court on Stewart Title's Motion to Dismiss Prince Brothers, Inc.'s Counterclaim, or in the Alternative, Motion for More Definite Statement, and Incorporated Memorandum of Law (Doc. #132). In response, Prince Brothers, Inc.'s filed a response. Stewart's motion is denied.

**I. Standard of Review**

A motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is evaluated in the same manner as a motion to dismiss a complaint. Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001).

In deciding a motion to dismiss, the Court accepts the facts of the countercomplaint as true and views them in the light most favorable to the non-moving party. See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac

Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). A counsercomplaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the [counter-claimant] can prove no set of facts in support of his claim which would entitle him to relief. 75 Acres, LLC v. v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Generally, the issue in a 12(b)(6) motion is not whether the counter-claimant will ultimately prevail on his claim, but rather, whether the allegations contained in the countercomplaint will be sufficient to allow discovery as to their proof. Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579-80 (11th Cir. 1986).

## II. Facts

Stewart and Prince shared an underwriter/underwritee relationship. (Doc. #121 ¶6). Stemming from this relationship, Stewart acted as an underwriter on several of Prince's Loans. (Doc. #121 ¶17). During the course of their employment, several Prince employees and independent contractors (employees) defrauded Prince. (Doc. #121 ¶5). Namely, the Prince employees forged signatures in order to embezzle escrow funds. (Doc. #121 ¶5). Eventually, Prince was apprised of the embezzlement and confronted one of the employees. (Doc. #121 ¶11). In response to this confrontation, the employee agreed to return the embezzled funds. (Doc. #121 ¶11). Returning the funds, the employee issued several checks to Prince. (Doc. #121 ¶12). However, each check bounced. (Doc. #121 ¶12). At this juncture Prince threatened legal action. (Doc. #121 ¶13).

Again, the employee agreed to reimburse the embezzled funds; this time the employee offered to wire the replacement funds to Prince. (Doc. #121 ¶13).  Unlike the previous attempt at payment, the wire transfer was successful. (Doc. #121 ¶14).  Upon later revelation, it was discovered that the reimbursed funds may not have been the same funds that were stolen. (Doc. #121 ¶18).  Instead, the funds used to reimburse Prince were allegedly embezzled from other valid escrow accounts (Doc. #121 ¶18).  It is this allegation that has led to Stewart's suit against Prince.

In response to Stewart's complaint, Prince filed a countercomplaint. (Doc. #121)  In its countercomplaint Stewart alleges two claims: trade libel and tortious interference with a contract. (Doc. #121 at 4 and 7).  In lieu of answering, Stewart opted to file the present motion to dismiss. (Doc. #132).

### III. Analysis

A. *Trade Libel*

To state a valid trade libel claim, the Plaintiff must allege:

> (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

Botham v. Harrington, 458 So. 2d 1163, 1168 (Fla. 3rd DCA 1984)(citing Allington Towers Condominium North, Inc. v. Allington Towers North, Inc., 415 So. 2d 118 (Fla. 4th DCA 1982); Continental

Development Corp. Of Fla. v. Duval Title & Abstract Co., 356 So. 2d 925 (Fla. 2d DCA 1978); Gates v. Utsey, 177 So. 2d 486 (Fla. 1st DCA 1965); Restatement (Second) of Torts §§ 623A-634, 651 (1977); W. Prosser, Handbook of the Law of Torts § 128 (4th ed. 1971)). In its countercomplaint, Prince properly pleads all elements of a trade libel claim.

In arguing for dismissal of the trade libel claim, Stewart asserts that Prince's countercomplaint did not provide enough detail. Specifically, Stewart argues that Prince fails to explicitly plead which statements caused the alleged injuries. (Doc. #132 at 4). However, on review of the complaint, it becomes clear that Prince met its burden. Namely, in paragraph twenty-eight Prince alleges that Liz Quesada –a Stewart employee– contacted Fidelity –Prince's business partner– and informed them of wrongdoing on Prince's part in relation to their Alabama operations. (Doc. #121 ¶48). This allegation provides more then enough to detail for Stewart to formulate an answer.

As mentioned, in paragraph twenty-eight, Prince specifically alleges false statements made in relation to its Alabama operations –not its Naples office. This fact is important, because as Stewart correctly identifies: truth is a valid defense to trade libel. (Doc. #132 at 10). After identifying this point, Stewart continues arguing that Prince's claim should fail since –by Prince's own admission– its employees were embezzling funds. (Doc. #132 at 10). However, since the wrongdoing was limited to Prince's Naples office and Prince alleges that Stewart's statements implicated Prince's

-4-

Alabama operations -based on the face of the pleading- truth is no defense.  For the foregoing reasons, as to Prince's trade libel claim, Stewart's motion is denied.

   B. *Tortious Interference with a Contract*

   To state a valid claim for tortious interference with a contract or business relationship, the Plaintiff must allege:

> (1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting from the third person's failure to perform.

Seminole Tribe v. Times Publ'g Co., 780 So. 2d 310, 315 (Fla. 4th DCA 2001)(citing Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385 (Fla. 4th DCA 1999); Restatement (Second) of Torts § 766 (1979)).  In  Seminole Tribe, the Court equates the elements of tortious interference with a contract with those of tortious interference with a business relationship.  Id. at 315.  However, in  Smith v. Ocean State Bank, 335 So. 2d 641 (Fla. 1st DCA 1976), the court differentiated the two claims.  In differentiating the claims, the Smith court found that "tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship."[1]

---

[1] Since Prince alleges the existence of contract (Doc. #121
(continued...)

Id. at 642.  Thus, the Court is faced with two conflicting opinions.  One opinion - Seminole Tribe -  draws no distinction between the two claims.  The other -Smith- identifies the claim's similarities, but draws a distinction.  On these facts, this conflict needs not form an impediment to Prince's claim.  In making this observation, the Court means to identify the possibility that Prince -under both Seminole Tribe and Smith- has  properly pled the necessary elements for both tortious interference with a contract and tortious interference with a business relationship.  Appending this observation, the Court recognizes that Prince's countercomplaint clearly states a valid claim for tortious interference with a business relationship; however, its claim for tortious interference is not as concrete.  Despite this finding, since Prince titled its second claim as tortious interference with a contract, the Court must examine the claim as if it were a claim for tortious interference with a contract and not tortious interference with a business relationship.  Doing so, the Court is again faced with a difficult question: is a breach of contract required to sustain a claim of tortious interference with a contract or is termination adequate?

---

$^{1}$(...continued)
¶40), one would think that the Court's analysis is unnecessary.
However, as covered below, the existence of a contract is not the
only difference between the claims of tortious interference with a
contract and tortious interference with a business relationship.
Not only must a contract exist, but the contract must be either
breached or terminated.  Although the Court unreservedly states
that termination -not solely breach- may suffice to sustain a
tortious interference with a contract claim, the case law is murky
on this point.

To answer this question, the Court first turns to Smith. In Smith, for purposes of defining the claim of tortious interference with a contract, the court quotes 45 Am.Jur.2d Interference, § 39; one portion of the quote reads "A party to a contract ... has a right of action against a person who had procured a *breach* or *termination* of the contract by the other party thereto." (emphasis added). Id. at 642. Reading the quote, the Court is influenced by the "breach or termination" language. This portion of the quote leads to the inference that either a breach or termination of a contract is sufficient to sustain a tortious interference with a contract claim. However, upon further research, the Court discovered case law indicating that a breach of contract is required. See McKinney-Green, Inc. v. Davis, 606 So. 2d 393, 397-398 (Fla. 1st DCA 1992)(indicating that breach is required to sustain a tortious interference with a contract claim). Thus, the Court is again faced with another clash of case law. However, the rules regarding claim dismissal minimize the Court's dilemma. In deciding a motion to dismiss, the Court is tasked not to dismiss a claim rasing a novel theory of law. See Johns-Manville Sales Corp. v. United States, 622 F. Supp. 443, 446 (N.D. Cal. 1985)(citing Sherman v. St. Barnabas Hospital, 535 F. Supp. 564, 572 (S.D.N.Y. 1982)(indicating that a court should be reluctant to dismiss novel legal theories). At the very least it can be said that precedent exists for Prince to claim that termination of a contract suffices to sustain a tortious interference with a contract claim. Thus, Prince has grounds to proffer such an argument. Accordingly, the

Court denies Stewart's motion to dismiss Prince's tortious interference with a contract claim.

Thrusting additional criticisms at Prince's complaint, Stewart attacks the specificity of Prince's tortious interference with a contract claim. Like the similar accusation levied at Prince's first claim, this assertion is without merit. Again, the Court identifies the notice nature of a complaint. The purpose of a pleading is to give notice rather than provide the exact details that will ensue at trial. Judge Weinstein brings home this concept explaining:

> [the] tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings. . . . "[p]articularization of the issues is indeed the first order of business. But the rules do not contemplate their definition by paper pleadings." <u>New Home Appliance Center v. Thompson</u>, 250 F.2d 881, 883-884 (10th Cir. 1957).

<u>Stromillo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 54 F.R.D 396, 397-98 (E.D.N.Y. 1971). After reviewing the countercomplaint and specifically the tortious interference with a contract claim, the Court finds that Prince's countercomplaint –more specifically, Prince's tortious interference with a contract claim– delineates the necessary specifics to hurdle the Federal Rules of Civil Procedure's pleading requirements.

In another line of attack, Stewart alleges that Prince's tortious interference claim cannot be sustained since its actions fall under the economic interest privilege. (Doc. #132 at 9). While the Court recognizes a claim properly extinguished by an

-8-

affirmative defense must be dismissed, the Court also recognizes that some affirmative defenses are more impregnable then others. For instance some affirmative defenses, e.g., statutes of limitations, erect a concrete barrier, which no amount of protest will topple.  The economic interest affirmative defense is not one of these impregnable defenses.  The mere assertion of the economic privilege does not always smother a claim.  Evidencing this fact is the opinion in McCurdy v. Collis, 508 So. 2d 380 (Fla. 1st DCA 1987).  In McCurdy, the court recognized that a qualified privilege does not always terminate a claim.  In McCurdy, the court reasoned that:

> In those instances where there is a qualified privilege to make statements potentially damaging to another, a plaintiff must prove express malice or malice in fact in order to recover. Proof of malice in fact involves production of evidence from which the jury could conclude that the challenged statement was motivated by ill will and the desire to harm. Such proof may be established indirectly, i.e., by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive. Where the circumstances surrounding the statement are in dispute, the question of qualified privilege is a factual determination for resolution by the jury.

Id. at 382.  With this foundation, the Court observes that the privilege is not absolute –unlike other affirmative defenses.  The privilege can be countered with a showing of malice.  Since Prince alleges malice in its complaint (Doc. #121 ¶42), Prince reserves the ability to set forth facts which may overcome the economic interest privilege.  Furthermore, the Court finds that the mere

-9-

existence of a conceivably sustainable affirmative defense –with the exception of the aforementioned impregnable defenses– does not mandate the dismissal of a claim; rather, the claim should be permitted to advance to the next stage of litigation where the claim and the affirmative defenses may be fleshed out.[2] Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Stewart Title's Motion to Dismiss Prince Brothers (Prince), Inc.'s Counterclaim, or in the Alternative, Motion for More Definite Statement, and Incorporated Memorandum of Law (Doc. #132) is DENIED.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>11th</u> day of October, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

---

[2] This line of reasoning is equally applicable to Stewart's claimed privilege in connection to Prince's trade libel claim. (Doc. #132 at 5).

-10-